Matthew Z. Crotty, WSBA 39284
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave. Ste. 404
Spokane, WA  99201
Telephone:  (509)850-7011
Email: matt@crottyandson.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| JUSTIN CARLILE, | ) | NO.  2:21-cv-00276-SAB |
| Plaintiff, | ) | |
| | ) | AMENDED COMPLAINT |
| vs. | ) | JURY DEMANDED |
| WASTE CONNECTIONS OF WASHINGTON, INC., | ) | |
| Defendant. | ) | |

The Plaintiff, JUSTIN CARLILE, by and through MATTHEW Z. CROTTY,

of CROTTY & SON LAW FIRM, PLLC, complains of Defendant and alleges as

follows:

## I.  PARTIES, JURISDICTION, & VENUE

1.    Justin Carlile was employed by the above-captioned Defendant during

the time-frame relevant to this lawsuit and worked in Spokane County, Washington,

AMENDED COMPLAINT: 1

on behalf of Defendant.

2.      Defendant Waste Connections of Washington Inc. (WC) is headquartered in The Woodlands, Texas and conducted business in Spokane County, Washington at all times relevant to this lawsuit.

3.      The Eastern District of Washington has jurisdiction over this case under 28 U.S.C. §1331.

4.      Venue is proper in the Eastern District of Washington because, *inter alia,* Defendant conducts business in Spokane County, Plaintiff resides in Spokane County, and because acts and omissions giving rise to Mr. Carlile's complaint took place in Spokane County, Washington.

## II. FACTS

5.      Mr. Carlile incorporates the above facts as if pled verbatim herein.

6.      WC hired Mr. Carlile as a general laborer in May 2019.

7.      WC promoted Mr. Carlile into a leadership position (Operations Supervisor) in February 2020 at WC's worksite located in Spokane Valley, Washington (the Valley Transfer Station).

8.      On or around June 8, 2021 Quinn Gonder became Mr. Carlile's supervisor.

9.      In early June 2021 Aaron Lawhead served as Mr. Gonder's supervisor.

AMENDED COMPLAINT: 2

10.     Mr. Lawhead has a practice of those who take workplace disability leave "pussies" "bitches" and other demeaning words. At one time Mr. Lawhead told a former WC manager that "Dan" who had a L&I claim was a "bitch" for taking time off of work. At another time Mr. Lawhead told that same manager that Matt was a "typical millennial" for taking time off to be with his pregnant wife.

11.     Between his May 2019 hiring at WC and June 2021 Mr. Carlile had no documented performance issues. He'd never been written up or put on notice that his workplace performance was lacking.

12.     Beginning in early June 2021 Mr. Carlile began feeling symptoms consistent with anxiety and depression. Those symptoms included difficulty concentrating, fatigue, feelings of helplessness, difficulty sleeping, and inability to control worrisome feelings.

13.     On June 10, 2021, Mr. Carlile asked Mr. Gonder to have half of June 11, 2021, off. Recently Mr. Carlile (now a salaried employee) had been working approximately 55/hours per week. Mr. Gonder initially denied Mr. Carlile's request but a few hours changed his mind and, in doing so, announced his decision over the radio where Mr. Carlile's WC co-workers could now hear words to the effect of "if you guys are good Justin's gonna take the rest of the day off."

AMENDED COMPLAINT: 3

14.    Mr. Carlile, taking Mr. Gonder's hint that taking time off wasn't what the boss wanted, opted to stay at work.

15.    On June 14, 2021, Mr. Gonder took Mr. Carlile aside and chastised him for not giving "100%" and Mr. Carlile's efforts "weren't enough." Mr. Gonder's critiques shocked Mr. Carlile as up until he'd asked Mr. Gonder for a half day off to address mental health issues he'd received no negative feedback. Further, up until June 14, 2021, Mr. Carlile had called in sick once since beginning work at WC[1].

16.    On the afternoon of June 14th Mr. Carlile made a doctor's appointment. That evening Mr. Carlile went home. He was stressed. His blood pressure was elevated. He looked awful. Mr. Carlile's parents advised him to go to the doctor.

17.    On June 15, 2021, around 8:40 AM Mr. Carlile visited Dr. Cecilia T. Pham who, in turn, diagnosed Mr. Carlile with anxiety and depression and advised Mr. Carlile to take leave under the Family Medical Leave Act (FMLA).

18.    On June 15, 2021, Mr. Carlile applied for FMLA via WC's third party benefits administrator, Cigna.

---

[1] Mr. Carlile's WorkDay account will likely reflect greater than one day of sick leave; however, those excess days were used for vacation after being approved by management.

AMENDED COMPLAINT: 4

19.    On June 15, 2021, at 12:38 PM Mr. Carlile emailed Mr. Gonder in order to tell him that he was taking medical leave effective immediately.

20.    Sometime during June 15, 2021, Mr. Gonder called Mr. Carlile's former manager (Matt Konzel) and asked Mr. Konzel words to the effect of "what's wrong with Justin? Why's he gone?"

21.    About 3-4 other times Mr. Gonder would (throughout June – July) follow up trying to get information on why Mr. Carlile was on leave.

22.    On June 15, 2021, at 3:43 PM Mr. Carlile emailed Mr. Gonder, Laura Hoel (a WC "HR Generalist" located in Western Washington), Mr. Lawhead, and Jason Hudson (a WC Division Director) and wrote, in part:

> I was disappointed and concerned when you met with me on 6-14 about my work hours. I left last Thursday, June 10th at 430pm after arriving at work at approximately 630 am. That was 30 minutes before close and I had worked a 10 hour day. The team was in a good place and I was following what Aaron had said that days to leave early don't often present themselves so get out of work when you can. It is a rare occasion I ever flex my time. I asked if I could take a 1/2 personal day on Friday June 11th as I needed a mental health day. Not only did you deny my ability to flex my schedule, you later changed your mind. You proceeded to announce it to the team over the radio and I did not leave. I felt compelled to stay based on your first response and lack of support for my mental health.
>
> …
>
> Instead of recognizing my dedication to the organization and my ability to flex up not just down you indicated that it "wasn't enough" and I need to give "100%". As a salaried employee who is in a leadership

AMENDED COMPLAINT: 5

role my time management skills, my over-site for this team and the facility have never been of question or concern.

23.     This wasn't Ms. Hoel's first rodeo regarding an employee seeking workplace FMLA leave on account of depression. In 2019 Ms. Hoel signed a declaration in support of WC's request to dismiss an employee's disability discrimination and FMLA claims in the *Poe v. Waste Connections, U.S. Inc.* 3:17-cv-6014-RJB (W.D. Wash.) lawsuit.

24.     Upon information and belief, Mr. Gonder did not like being called out in front of his bosses (and HR) for not accommodating the mental health concerns of a peer.

25.     Mr. Carlile's FMLA leave lasted from June 15, 2021, through July 12, 2021.

26.     On July 8, 2021, Dr. John Shetlar released Mr. Carlile back to work but limited his work week to 40 hours.

27.     On July 9, 2021, Mr. Carlile emailed Ms. Hoel and Mr. Lawhead in order to inform both "I am cleared to return to work on the Monday July 12th. I am limited to only 40 hours a week per doctors request as well as an hour phone call per week with my doctor. I already reached out to Aaron and explained restrictions of my return and we agreed to a 9am - 530pm shift. Let me know if you have any other questions."

AMENDED COMPLAINT: 6

28.    Mr. Carlile arrived at work on July 12, 2021, at 9:00 AM and was shocked to see the items in his work locker (boots, Patagonia pants, Yeti cup, hard hat) were missing. Mr. Carlile also noticed that the workplace vibe seemed different. He felt shunned. He felt ostracized. Only one person spoke with him and that conversation was brief.

29.    At 9:30 AM on July 12, 2021, Mr. Carlile met with Mr. Gonder and Mr. Lawhead. Mr. Carlile showed Mr. Lawhead and Mr. Gondor his doctor's note which, in turn, informed WC that Mr. Carlile's work week was to be 40 hours or less.  Mr. Lawhead asked Mr. Carlile "why the restriction" and "what are the restrictions for" to which Mr. Carlile replied words to the effect of "it's not a physical issue but the details are between my doctor and me." Mr. Carlile asked "where's my stuff" to which Mr. Gonder and Mr. Lawhead professed ignorance that Mr. Carlile's gear was missing. Mr. Lawhead then dismissed Mr. Carlile from the workplace and told him to work from home until July 15th "until HR could come into town."

30.    Mr. Carlile returned to work on July 15, 2021, whereupon Mr. Gonder put Mr. Carlile on a Performance Improvement Plan (PIP). The PIP asked Mr. Carlile to, among other things, improve his "servant leadership" and claimed that "[t]here have been complaints from staff that their needs of a supervisor are not being met."

AMENDED COMPLAINT: 7

31.     The PIP contained no objectively measurable performance objectives.

32.     Present at this meeting were Mr. Gonder, Mr. Lawhead, and Ms. Hoel from HR.

33.     The PIP ended stating "[w]e will follow up every 30 days to review your forward progress" - - - a statement Mr. Carlile understood to mean that he had at least until August 15, 2021, to improve.

34.     Mr. Carlile took immediate steps to comply with the very vague and very subjective PIP. He met with his team members and had conversations with all but one - - - an individual named "Keith" who outright refused to talk to Mr. Carlile.

35.     Mr. Carlile kept Mr. Gonder informed of his work on complying with the PIP.

36.     Between July 15, 2021, and August 2, 2021, neither Mr. Gonder, Mr. Lawhead, nor anyone else at WC tell Mr. Carlile that he wasn't doing enough to comply with his PIP. In fact, on July 29, 2021, Mr. Gonder left Mr. Carlile in charge of the Spokane Valley worksite while Mr. Gonder went to Vancouver.

37.     On August 3, 2021, Mr. Carlile met with Mr. Lawhead for a previously scheduled 1:1. At that meeting WC fired Mr. Carlile. Mr. Lawhead's stated reason for firing Mr. Carlile was "performance" insofar as Mr. Carlile's reports (Keith being one of them) allegedly had "lost respect" for Mr. Carlile because he went on leave

and that Mr. Carlile should have notified his reports of his absences.

38.    Mr. Carlile ended the meeting saying words to the effect of "this is retaliation for me going on FMLA."

### III. CAUSES OF ACTION

39.    Mr. Carlile incorporates the above paragraphs as if pled verbatim herein.

### (COUNTS ONE & TWO – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (FMLA) – INTERFERENCE AND RETALIATION)

40.    The elements of an FMLA interference claim require proof the employee (1) was eligible for the FMLA's protections, (2) the employer was covered by the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee provided sufficient notice of her intent to take leave, and (5) the employer denied her FMLA benefits to which she was entitled." *Bushfield v. Donahoe,* 912 F. Supp. 2d 944, 953 (D. Idaho 2012) (*citing Sanders v. City of Newport,* 657 F.3d 772, 778 (9th Cir. 2011)). "The employer's intent is irrelevant to a determination of liability in an interference claim." *Id.* (*citing Sanders*).

41.    Mr. Carlile was eligible for FMLA's protections. Mr. Carlile worked in excess of 1,250 hours for WC in the year prior to June 15, 2021.

AMENDED COMPLAINT: 9

42.    WC is an FMLA covered employer. During the timeframe relevant to this lawsuit WC employed in excess of 50 employees within a 75-mile radius of Mr. Carlile's Spokane Valley, Washington worksite.

43.    Mr. Carlile was entitled to FMLA leave as his depression and anxiety was a serious health condition.

44.    Mr. Carlile informed WC of his intent to take FMLA leave.

45.    WC denied Mr. Carlile the benefit of continued (post August 3, 2021) FMLA eligibility by firing him for failing to do something the FMLA didn't require: tell one's co-workers the reason for taking leave.

46.    As it relates to the FMLA retaliation claim a plaintiff must show "(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the two actions." *Bourgo v. Canby Sch. Dist.,* 167 F. Supp. 2d 1173, 1179 (D. Or. 2001). And circumstantial evidence of close proximity between the protected FMLA leave and discharge, standing alone, is enough to withstand summary judgment. *Foraker v. Apollo Grp., Inc.,* 427 F. Supp. 2d 936, 942 (D. Ariz. 2006) *aff'd,* 302 F. App'x 591 (9th Cir. 2008); *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 507 (9th Cir. 2000).

AMENDED COMPLAINT: 10

47.    Mr. Carlile took leave under the FMLA form June 15, 2021, through July 12, 2021.

48.    WC placed Mr. Carlile on a PIP the day he retuned to the worksite following his FMLA, stole his personal belongings while Mr. Carlile was on FMLA, and then fired Mr. Carlile before the 30-day PIP timeframe expired and justified its firing on made up performance grounds when those supposed performance issues were based on Mr. Carlile going on leave but not telling his subordinates why.

49.    A causal connection exists for the reasons set out in the above-paragraph including (a) the closeness in time between FMLA ending and the PIP, theft, and discharge, (b) WC not having *any* documented performance issues with Mr. Carlile until *after* he returned from FMLA, and (c) WC firing Mr. Carlile before his PIP ended.

50.    WC's violations of the FMLA are willful. The HR Generalist (Ms. Hoel) who was involved in Mr. Carlile's FMLA was well aware of FMLA and rules regarding disabled employees as she'd been involved in a lawsuit regarding both years earlier. Surly she knew better but either assisted WC in violating the FMLA or sat idly by and allowed Mr. Carlile's management to fire him for no legitimate reasons.

AMENDED COMPLAINT: 11

51.    WC's violations of the FMLA caused Mr. Carlile damages in an amount to be proven at trial.

### (COUNT THREE– DISABILITY DISCRIMINATION)

52.    In order for Mr. Carlile to prevail on his disability discrimination claim he must prove: (1) that he has a disability, record of a disability, and/or was "regarded as" disabled ,(2) that he was able to perform the essential functions of the job in question with or without reasonable accommodation; and (3) an adverse employment action. WPI 330.32.

53.    Mr. Carlile is disabled with anxiety and depression.

54.    Mr. Carlile also had a record of being treated for anxiety and depression during the June – July 2021 time frame.

55.    Mr. Gonder and Mr. Lawhead regarded Mr. Carlile as disabled by asking why Mr. Carlile went on leave (via Lawhead) and contacting (via Gonder) Mr. Carlile's former supervisor to ask why Mr. Carlile was missing work.

56.    Mr. Carlile was able to perform the essential functions of his job as shown by, for example, he being placed solely in charge of the Spokane Valley site on July 19, 2021.

57.    WC fired Mr. Carlile.

AMENDED COMPLAINT: 12

58.    WC's actions caused Mr. Carlile damages in an amount to be proven at trial.

## IV. PRAYER FOR RELIEF

Mr. Carlile respectfully seeks:

A.    All damages allowed under the law including front pay, back pay, pre-judgment interest, adverse tax consequences, liquidated damages, and general damages.

B.    Attorneys' fees, costs, and litigation expenses as allowed under RCW 49.48.030, the FMLA, and the WLAD.

C.    A declaration that Defendant violated the FMLA and the WLAD.

D.    All other relief that is just and equitable.

DATED this 17th day of September, 2021.

CROTTY & SON LAW FIRM, PLLC

By/s/ Matthew Z. Crotty
　　　Matthew Z. Crotty, WSBA 39284
　　　905 W. Riverside Ave. Ste. 404
　　　Spokane, WA  99201
　　　Telephone:  (509)850-7011
　　　Email: matt@crottyandson.com

AMENDED COMPLAINT: 13

1

<u>CERTIFICATE OF SERVICE</u>

2

    I certify that on September 17, 2021, I electronically filed the foregoing with

3

the Clerk of the Court using the CM/ECF system, which will send notification of

4

such filing to those attorneys of record registered on the CM/ECF system. All other

5

parties, if any, shall be served in accordance with the Federal Rules of Civil

6

Procedure.

7

                    CROTTY & SON LAW FIRM, PLLC

8

                    By /s/ Matthew Z. Crotty

9

                        Matthew Z. Crotty, WSBA 39284

10

                        905 W. Riverside Ave. Ste. 404
                        Spokane, WA  99201

11

                        Telephone:  (509)850-7011
                        Email: matt@crottyandson.com

12

13

14

15

16

17

18

19

20

21

22

AMENDED COMPLAINT: 14